1  Adam Y. Siegel (SBN 238568)
2  Adam.Siegel@jacksonlewis.com
   Orlando Arellano (SBN 234073)
3  Orlando.Arellano@jacksonlewis.com
   Rebecca Kim (SBN 276163)
4  Rebecca.Kim@jacksonlewis.com
   **JACKSON LEWIS P.C.**
5  725 South Figueroa Street, Suite 2800
   Los Angeles, California  90017-5408
6  Telephone:  (213) 689-0404

7  Attorneys for Defendants
   CARDINAL HEALTH 100, LLC;
8  CARDINAL HEALTH 108, LLC;
   CARDINAL HEALTH 110, LLC;
9  CARDINAL HEALTH 119, LLC;
   CARDINAL HEALTH 200, LLC;
10 CARDINAL HEALTH 201, INC; and
   CARDINAL HEALTH 414, LLC

11

12          **UNITED STATES DISTRICT COURT**

13        **CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

14

| | |
|---|---|
| JOSE LUIS SANDOVAL, an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CARDINAL HEALTH 200, LLC; a Delaware limited liability company; CARDINAL HEALTH 110, LLC, an Indiana limited liability company; CARDINAL HEALTH 108, LLC, a Delaware limited liability company; CARDINAL HEALTH 414, LLC, a Delaware limited liability company; CARDINAL HEALTH 100, LLC, an Indiana limited liability company; CARDINAL HEALTH 119, LLC, a Delaware limited liability company; CARDINAL HEALTH 201, INC, a Delaware corporation; DANIEL RUIZ, an individual; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: CIVSB2434865<br><br>**NOTICE OF REMOVAL OF SAN BERNARDINO SUPERIOR COURT CASE NO. CIVSB2434865 TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, and 1453 (CAFA)**<br><br>(Filed concurrently with Declarations of Adam Y. Siegel, Laura Garza; Civil Case Cover Sheet; Notice of Interested Parties; and Corporate Disclosure Statement)<br><br>Complaint Filed:  November 19, 2024<br>FAC Filed:           December 17, 2024 |

Case No.:                                  1      NOTICE OF REMOVAL OF ACTION TO
                                                   THE UNITED STATES DISTRICT
                                                   COURT

**TO THE HONORABLE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION, PLAINTIFF JOSE LUIS SANDOVAL, AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendants CARDINAL HEALTH 100, LLC; CARDINAL HEALTH 108, LLC; CARDINAL HEALTH 110, LLC; CARDINAL HEALTH 119, LLC; CARDINAL HEALTH 200, LLC; CARDINAL HEALTH 201, INC; and CARDINAL HEALTH 414, LLC ("Defendants") hereby invoke this Court's jurisdiction under the provisions of 28 U.S.C. §§ 1332, 1441, 1446 and 1453, and remove San Bernardino Superior Court Case No. CIVSB2434865 to this Court based on the Class Action Fairness Act of 2005 ("CAFA"). In support thereof, Defendants assert the following:

## SERVICE AND PLEADINGS FILED IN STATE COURT

1. On November 19, 2024 Plaintiff Jose Luis Sandoval ("Plaintiff") filed an unverified Class Action Complaint against Defendants in the Superior Court of the State of California for the County of San Bernardino, entitled *JOSE LUIS SANDOVAL individually and on behalf of all others similarly situated, Plaintiff, vs. CARDINAL HEALTH 200, LLC; a Delaware limited liability company; DANIEL RUIZ, an individual; and DOES 1 through 100, inclusive, Defendants*; Case No.: CIVSB2434865, which set forth the following twelve causes of action: (1) Failure to Pay Overtime Wages; (2) Failure to Pay Minimum Wages; (3) Failure to Provide Meal Periods; (4) Failure to Provide Rest Periods; (5) Waiting Time Penalties; (6) Wage Statement Violations; (7) Failure to Timely Pay Wages; (8) Failure to Indemnify; (9) Failure to Pay Interest on Deposits; (10) Violation of Labor Code § 227.3; (11) Violation of Quota Laws; and (12) Unfair Competition.

2. On December 17, 2024, Plaintiff filed an amended Complaint, adding as Defendants CARDINAL HEALTH 110, LLC, CARDINAL HEALTH 108, LLC, CARDINAL HEALTH 414, LLC, CARDINAL HEALTH 100, LLC, CARDINAL HEALTH 119, LLC, and CARDINAL HEALTH 201, INC. (the "Complaint"). The Complaint asserted the same twelve causes of action as a putative Class Action. (*See* Declaration of Adam Y. Siegel ["Siegel Decl."], "**Exhibit A**".) As stated in paragraph 1

of Plaintiff's First Amended Complaint, Plaintiff brought this "class action" on behalf of himself and "on behalf of all other current and former non-exempt California employees employed by or formerly employed by Defendants." (*See* Siegel Decl., at **Exhibit "A"**, Plaintiff's Complaint at ¶ 1.) A true and correct copy of the Summons, Complaint, and other related court documents received by Defendant's counsel are attached as Exhibit "A" to the Siegel Declaration.

3. On February 24, 2025, Plaintiff served all Defendants except for Daniel Ruiz (who remains unserved) with a copy of the Summons and the original and First Amended Complaint by process server (Siegel Decl., ¶ 3, **Exhibit "B"** ["Proofs of Service of Summons and Complaint"].) A true and correct copy of the Proofs of Service of Summons and Complaint is attached as Exhibit "B" to the Siegel Declaration.

4. On March 24, 2025, Defendants filed and served an Answer to the Complaint in San Bernardino Superior Court, making a general denial as permitted by California Code of Civil Procedure § 431.30(d) and asserting various affirmative defenses. (Siegel Decl., ¶ 4, **Exhibit "C"** ["Answer"].) A true and correct copy of Defendants' Answer is attached as Exhibit "C" to the Siegel Declaration.

5. As of the date of this Notice of Removal, Exhibits "A," "B" and "C" to the Siegel Declaration constitutes all of the pleadings received and served by Defendants in this matter. (Siegel Decl. at, ¶ 5.)

**TIMELINESS OF REMOVAL**

6. This Notice of Removal has been filed within 30 days after Defendants were served with a copy of the Summons and Amended Complaint on February 24, 2025. (Siegel Decl., ¶ 2.) Therefore, it has been filed within the time-period mandated by 28 U.S.C. § 1446(b). *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 354 (1999) ("[T]he defendant's period for removal will be no less than 30 days from service, and in some categories, it will be more than 30 days from service, depending on when the complaint is received."); *see also* California Code of Civil Procedure § 415.30(b).

///

## **VENUE IS PROPER**

7. This action was filed in the Superior Court in and for the County of San Bernardino. Thus, venue of this action properly lies in the United States District Court for the Central District of California-Eastern Division pursuant to 28 U.S.C. §§ 84(c)(1) and 1441(a). Venue of this action is also proper pursuant to 28 U.S.C. § 1391, which provides that an action may be venued in a judicial district where a substantial part of the events or omissions giving rise to the claim occurred, and where, based on information and belief, the plaintiff resides. The Complaint asserts that "San Bernardino County is where the causes of action complained of herein arose; the county in which the employment relationship began; the county in which performance of the employment contract, or part of it, between Plaintiff and Defendants was due to be performed; the county in which the employment contract, or part of it, between Plaintiff and Defendants was actually performed; and the county in which Defendants, or some of them reside. Moreover, the unlawful acts alleged herein have a direct effect on Plaintiff and Class Members in San Bernardino County, and because Defendants employ numerous Class Members in San Bernardino County." (Complaint at ¶ 19.) Moreover, Plaintiff worked for Defendant Cardinal Health 200, LLC in the County of San Bernardino (Declaration of Laura Garza, ["Garza Decl."] ¶ 6.)

## **REMOVAL IS PROPER BASED ON CLASS ACTION FAIRNESS ACT**

8. Removal of this action is proper under CAFA, 28 U.S.C. §§ 1332 *et seq*. Section 4 of CAFA, 28 U.S.C. § 1332(d)(2), has been amended to read, in relevant part:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

9. CAFA holds that a district court shall not apply section (d)(2) above to any class action where the primary defendants are States, State officials, or other governmental entities or where the proposed class involves less than 100 members. (28 U.S.C. § 1332(d)(5).)

///

10. As set forth below, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(d), in that it is a civil action filed as a class action and – based on the allegations in the Complaint – the matter in controversy plausibly exceeds the sum of $5,000,000, exclusive of interest and costs, and Plaintiff is a citizen of a state different from Defendants. (*See* 28 U.S.C. §§ 1332(d) and 1453.) Further, the number of putative class members is more than 100 and neither Defendant is a State, State official, or other governmental entity as set forth below.

### A. Plaintiff's Complaint Was Pled as a Class Action.

11. Plaintiff has filed this action as a "class action." Plaintiff's caption page states: "FIRST AMENDED CLASS ACTION COMPLAINT." (Complaint, pg. 1.) Additionally, the Complaint alleges, "this is a Class Action, pursuant to Code of Civil Procedure section 382, against Cardinal Health 200, LLC, and any of its respective subsidiaries or affiliated companies within the State of California ("CARDINAL 200"); Cardinal Health 110, LLC, and any of its respective subsidiaries or affiliated companies within the State of California ("CARDINAL 110"); Cardinal Health 108, LLC, and any of its respective subsidiaries or affiliated companies within the State of California ("CARDINAL 108"); Cardinal Health 414, LLC, and any of its respective subsidiaries or affiliated companies within the State of California ("CARDINAL 414"); Cardinal Health 100, LLC, and any of its respective subsidiaries or affiliated companies within the State of California ("CARDINAL 100"); Cardinal Health 119, LLC, and any of its respective subsidiaries or affiliated companies within the State of California ("CARDINAL 119"); Cardinal Health 201, Inc, and any of its respective subsidiaries or affiliated companies within the State of California ("CARDINAL 201"); and Daniel Ruiz ("RUIZ." and collectively, with CARDINAL 200, CARDINAL 110, CARDINAL 108, CARDINAL 414, CARDINAL 100, CARDINAL 119, and CARDINAL 201 and DOES 1 through 100, as further defined below, "Defendants") on behalf of Plaintiff and all other current and former non-exempt California employees employed by or formerly employed by Defendants ("Class Members")." (Complaint at ¶ 1.)

///

### B. Minimal Diversity Is Satisfied Under CAFA.

12. CAFA's diversity requirement is satisfied when there is minimal diversity, *i.e.*, when at least one member of a class of plaintiffs is a citizen of a state in which none of the defendants are citizens. 28 U.S.C. § 1332(d)(2); *see Snyder v. Harris*, 394 U.S. 332, 340 (1969) ("if one member of a class is of diverse citizenship from the class' opponent, and no nondiverse members are named parties, the suit may be brought in federal court even though all other members of the class are citizens of the same State as the defendant."); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (holding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)); *Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCx), 2015 U.S. Dist. LEXIS 120800, at *13 (C.D. Cal. Sep. 10, 2015) ("[defendant] needed only to establish that one plaintiff was a citizen of a different state from any one defendant at the time of removal.").

13. Citizenship of the parties is determined by their citizenship status at the action's commencement. *Mann v. City of Tucson*, 782 F.2d 790 (9th Cir. 1986).

14. For individuals, citizenship is determined by a person's domicile. *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return."). While residence and citizenship are not the same, a person's place of residence is *prima facie* evidence of his or her citizenship. *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"; *see also Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, at *22 (E.D. Cal. 2008).) Furthermore, a person's intention to remain may be established by his or her place of employment. *Youn Kyung Park v. Holder*, 572 F.3d 619, 625 (9th Cir. 2009); *see also Francisco v. Emeritus Corp.*, No. CV 17-02871-BRO (SSx)), 2017 U.S. Dist. LEXIS

90131, at *10 (C.D. Cal. June 12, 2017) ("Plaintiff's residence and employment in California are sufficient evidence of his intent to remain in California.").

15. Defendants are informed and believe, as alleged by Plaintiff in his Complaint, that Plaintiff was, at the time this action was commenced, and still is, a resident and a citizen of the State of California. (Complaint at ¶ 2.)  Additionally, based on a review of the Plaintiff's personnel file, he resided in California.  Specifically, Plaintiff JOSE SANDOVAL listed his address in the city of La Puente, California. (Garza Decl., ¶ 6.)

16. For purposes of removal under CAFA, the citizenship of a limited liability company is analyzed as an "unincorporated association" under Section 1332(d)(10). *Ferrell v. Express Check Advance of Georgia*, 591 F.3d 698, 704 (4th Cir. 2010); *Ramirez v. Carefusion Res., LLC,* No. 18-2852, 2019 U.S. Dist. LEXIS 112995, at *5 (S.D. Cal. July 1, 2019).) CAFA expressly states that "for purposes of this section .... an unincorporated association or corporation is deemed to be a citizen of the state where it has its principal place of business and under whose laws it is incorporated or organized." (28 U.S.C. § 1332(d)(10).) This is different from Section 1332(c) which has been interpreted to provide that "[a]n LLC is a citizen of every state in which is owners/members are citizens." *Johnson v. Columbia Properties Anchorage,* 437 F.3d 894, 899 (9th Cir. 2006).

17. With respect to ascertaining a corporation's principal place of business, the United States Supreme Court has adopted the "nerve center test." *Hertz Corp. v. Friend,* 559 U.S. 77, 80-81 (2010). Under the nerve center test, a corporation's principal place of business is where a corporation's high-level officers direct, control and coordinate the corporation's activities. *Id.*  A corporation can only have one "nerve center." *Id.* at 93-94. In evaluating where a corporation's "nerve center" is located, courts will look to the center of overall direction, control, and coordination of the company and will no longer weight corporate functions, assets, or revenues in each state. *Id.*

18. At the time Plaintiff filed the Complaint and presently, CARDINAL HEALTH 200, LLC; CARDINAL HEALTH 110, LLC; CARDINAL HEALTH 108, LLC; CARDINAL HEALTH 414, LLC; CARDINAL HEALTH 100, LLC; CARDINAL

HEALTH 119, LLC CARDINAL HEALTH 201, INC. (the "Cardinal Health Defendants") have always been companies organized under the laws of the States of Delaware or Indiana. (Garza Decl. at ¶ 4.) The company headquarters of the Cardinal Health Defendants – and thus their principal place of business – has been in the State of Ohio where the majority of Defendant's executive, administrative, financial and management functions are conducted, and from where the majority of Defendants' high-level officers direct, and coordinate and control the company's operations and activities. (*Id.*) Accordingly, for purposes of removal under CAFA, the Cardinal Health Defendants are citizens of the States of Delaware, Indiana and Ohio and are not citizens of the State of California.

19. Given the above, minimal diversity exists under CAFA because at least one member of the Putative Class (Plaintiff) was, at the time this action was commenced – and is still believed to be – a citizen of the State of California, while the Cardinal Health Defendants were – and still are – citizens of the States of Delaware, Indiana and Ohio.[1] (28 U.S.C. § 1332(d)(2).)

### C. The Amount In Controversy Exceeds $5,000,000 Based On A Plausible Reading Of The Allegations Of The Complaint.[2]

20. Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under CAFA: "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the

---

[1] The citizenship of the Doe defendants is immaterial for the purpose of determining minimal diversity under CAFA. (28 U.S.C. §§ 1332(d)(2) and 1441(a); *See Serrano v. 180 Connect, Inc.,* 478 F.3d 1018, 1021 (9th Cir. 2007).

[2] Defendants deny every allegation set forth by Plaintiff in the Complaint and deny that Plaintiff or Putative Class Members are entitled to any compensatory or statutory damages, injunctive relief, restitution, penalties, attorneys' fees, or any other relief. Defendants also deny that any of Plaintiff's claims are appropriate for class treatment. Notwithstanding the above, removal of this action is proper given that removal is based on the allegations asserted in the Complaint.

type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. REP. 109-14, at 42. Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly . . .").

21. In determining whether the amount in controversy exceeds $5,000,000, the Court must presume plaintiffs will prevail on each and every one of their claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,* 199 F.Supp. 993, 1001 (C.D. Cal. 2002) *citing Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability"); *Angus v. Shiley Inc.,* 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim"). Moreover, the argument and facts set forth herein may appropriately be considered in determining whether the jurisdictional amount in controversy is satisfied. *Cohn v. Petsmart, Inc.,* 281 F.3d 837, 843, n.1 (9th Cir. 2002) (*citing Willingham v. Morgan,* 395 U.S. 402, 407 n.3 (1969).

22. Notably, "[t]here is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation." *Muniz v. Pilot Travel Ctrs. LLC,* 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal. Apr. 30, 2007). Rather, a defendant seeking removal must prove by a preponderance of the evidence the aggregate amount in controversy exceeds the jurisdictional minimum. *Jauregui v. Roadrunner Transp. Servs.*, 28 F.4th 989, 991-994 (9th Cir. 2022) (finding that the district court erred in imposing – both explicitly and in its analysis – a presumption against CAFA jurisdiction, and holding instead that the defendant was only required to show the amount in controversy by a preponderance of evidence); *Rodriguez v.*

*AT&T Mobility Servs. Ltd. Liab. Co.,* 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard"); *see Lewis v. Verizon Commc'ns, Inc.,* 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability"); *Arias v. Residence Inn,* 936 F.3d 920, 922, 925 (9th Cir. 2019) (the removing defendant may rely on reasonable assumptions in estimating the amount in controversy, which "need not be proven").

23. In *Dart Cherokee Basin Operating Company, LLC v. Owens,* the United States Supreme Court held, like here, the complaint is silent as to whether the amount in controversy meets CAFA's jurisdictional threshold of $5,000,000 "a defendant's notice of removal need include only a *plausible* allegation that the amount in controversy exceeds the jurisdictional threshold." 135 S. Ct. 547, 554 (2014) (emphasis added). Following *Dart,* the Ninth Circuit confirmed "a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements," and further that "when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions." *Salter v. Quality Carriers, Inc.,* 2020 U.S. App. LEXIS 28364, *6-7 (9th Cir. Sep. 8, 2020) (citations and internal quotation marks omitted). Further, "'[n]o "antiremoval presumption attends cases invoking CAFA' because 'Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court.'" *Adams v. Toys 'R' US – Delaware, Inc.,* 2015 U.S. Dist. LEXIS 11338, at *5-6 (N.D. Cal. Jan. 29, 2015) *quoting Dart,* 135 S. Ct. at 554.) On the contrary, courts are required to interpret CAFA's provisions broadly in favor of removal. *Jordan v. Nationstar Mortg. LLC,* 781 F.3d 1178, 1183-84 (9th Cir. 2015).

24. Moreover, if a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise. *See e.g., Mendoza v. OSI Indus., LLC*, No. EDCV 22-1202 JGB (SPx), 2022 U.S. Dist. LEXIS 167940, at *11-18 (C.D. Cal. Sep. 16, 2022) ("Because Plaintiffs allege a 'policy' of requiring employees to work through their meal and rest break periods, without specifying

a violation rate or offering evidence of a rate lower than that assumed by Defendant, the Court finds Defendant's estimate of five meal break violations and five rest break violations per employee per week reasonable … [and also finds Defendant's] assume[d] violation rate of 100% for failure to timely pay wages at the end of class members' employment and to issue accurate wage statements … reasonable and consistent with Plaintiffs' allegations."); *Muniz v. Pilot Travel Ctrs. LLC,* 2007 U.S. Dist. LEXIS 31515, at *12-13 (E.D. Cal. Apr. 30, 2007) ("As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.") (*citing Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987)); *see also Arreola v. The Finish Line,* No. 14- CV-03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation— when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.,* 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.").

25. Plaintiff's Complaint does not allege a specific amount in damages. Nevertheless, without admitting that Plaintiff could recover any damages whatsoever, a plausible reading of the number of named Defendants, the factual allegations and causes of action set forth in the Complaint[3] conservatively places an aggregate amount in controversy exceeding $5,000,000 exclusive of attorneys' fees, interest, and costs, as follows:

---

[3] *See e.g. Lucas v. Michael Kors (USA) Inc.,* No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *8 (C.D. Cal. May 9, 2018) ("Defendants may use reasonable assumptions in calculating the amount in controversy for purposes of removal.").

| Case No.: | 11 | NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT |

*Failure to Provide Meal Periods (Third Cause of Action)* [4]

26. The Complaint alleges meal period violations under Labor Code sections 512 and 226.7 as follows: "For four (4) years prior to the filing of the Complaint in this Action through the present, Plaintiff and Class Members were, at times, not provided complete, timely 30-minute, duty-free uninterrupted meal periods every five hours of work without waiving the right to take them, as permitted. Moreover, at times, Defendants failed to provide one (1) additional hour of pay at the Class Member's regular rate of compensation on the occasions that Class Members were not provided compliant meal periods." (Complaint at ¶ 76.) Further, the Complaint alleges that "Plaintiff and Class Members are entitled to recover the full amount of their unpaid additional pay for unprovided compliant meal periods, in amounts to be determined at trial, plus interest and penalties thereon, attorneys' fees, and costs, under Labor Code sections 226 and 226.7, Code of Civil Procedure sections 1021.5 and 1032, and Civil Code section 3287." (Complaint, ¶ 79.)

27. The Putative Class Period (referred to in the Complaint as the "relevant time period") is from four years prior from the filing of the first amended complaint (November 19, 2024) to present for all wage claims – in other words from November 19, 2020 to present, or when a class is certified. [5] However, this Notice of Removal will calculate potential damages from December 17, 2020 (depending on the particular claims as set forth below). [6]

28. Claims for meal and rest period premium wages are wage claims. *Naranjo v. Spectrum Security Services, Inc.* (2022) 13 Cal.5th 93. So Plaintiff's meal and rest claims have four year statutes of limitations and this Notice of Removal will calculate potential

---

[4] Because of the large number of pay periods, the requisite amount in controversy can be established using only some of Plaintiff's claims.

[5] Plaintiffs assert a claim under Business & Professions Code sections 17200 et seq., which extends the statute of limitations on wage claims to four years. See *Cortez v. Purolator Air Filtration Products Co.*, (2000) 23 Cal. 4th 163.

[6] Although the original class action complaint was filed on November 19, 2024, many of the defendants were not named as defendants until the first amended complaint was filed on December 17, 2024. Therefore, for purposes of this removal, Defendants will use December 17, 2024 as the beginning of the class period.

Case No.:                12    NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT

damages from four years prior to the filing of the First Amended Complaint, or December 17, 2020.

29. Although Plaintiff has named numerous Cardinal Health entities, many of the entities do not actively employ individuals. As such, Defendants will only use employees that worked for either CARDINAL HEALTH 110, LLC and CARDINAL HEALTH 200, LLC for purposes of establishing the requisite amount in controversy. From December 17, 2020 to September 27, 2024[7], over 2,000 Putative Class Members worked for either CARDINAL HEALTH 110, LLC or CARDINAL HEALTH 200, LLC. (Garza Decl., ¶ 7-8.)

30. Those Putative Class Members that worked for CARDINAL HEALTH 110, LLC or CARDINAL HEALTH 200, LLC worked in excess of a combined 160,000 workweeks from December 17, 2020 through September 27, 2024. (Garza Decl., ¶ 7-8.)[8]

31. The average hourly rate for the Putative Class Members is more than $23.00 per hour. (Garza Decl., ¶ 9.)

32. Thus, while Defendants completely deny Plaintiff is entitled to recover any meal period premiums, based on these and other allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least one meal period premium per each two-week pay period (for all Putative Class Members, which would place over **$1,840,000** in controversy in connection with their meal period claim ($23.00 average hourly wage rate x 0.5 meal period premium per workweek x 160,000 workweeks). (Garza Decl. ¶¶ 7-9.)

---

[7] The end data of the data and calculations is on September 27, 2024 when Defendants pulled relevant data related to non-exempt workers of CARDINAL HEALTH 110, LLC and CARDINAL HEALTH 200, LLC including the number of Putative Class Members, the number of workweeks they collectively worked, and the beginning and ending dates of their employment (if any) to use for a prior Notice of Removal. The same data was also used for this notice of removal since it involved the same defendants. (Garza Decl., ¶ 7.)

[8] CARDINAL HEALTH 200, LLC was involved in a prior class action settlement that had a release period through November 10, 2022. Therefore, Defendants only calculated the number of workweeks for CARDINAL HEALTH 200, LLC employees after the release period, or from November 11, 2022 to September 27, 2024. (Garza Decl., ¶ 7.)

*Failure to Pay All Wages Due Upon Termination (Fifth Cause of Action)*

33. The Complaint alleges a derivative claim for waiting time penalties under Labor Code section 203 as follows: "Plaintiff is informed and believes, and based thereon alleges, that in the three (3) years before the filing of the Complaint in this Action through the present, Defendants, due to the failure, at times, to provide overtime wages mentioned above, failed to pay Plaintiff and Class Members all wages earned prior to resignation or termination in accordance with Labor Code sections 201 or 202." (Complaint at ¶ 91.) The Complaint further alleges "Plaintiff is informed and believes Defendants' failure, at times, to pay Plaintiff and Class Members all wages earned prior to termination or resignation in accordance with Labor Code sections 201 and 202 was willful. Defendants had the ability to pay all wages earned by Plaintiff and Class Members at the time of termination in accordance with Labor Code sections 201 and 202, but intentionally adopted policies or practices incompatible with the requirements of Labor Code sections 201 and 202 resulting in the failure, at times, to pay all wages earned prior to termination or resignation." (Complaint at ¶ 92.) And the Complaint alleges "Pursuant to Labor Code § 203, the Waiting Time Subclass is entitled to recover from Defendants the statutory penalty, which is defined as the Waiting Time Subclass members' regular daily wages at their regular hourly rate of pay for each day they were not paid, up to a maximum of thirty (30) days." (Complaint at ¶ 93.)

34. Assuming a 100% violation rate and 30 days of wages is reasonable for purposes of establishing the amount in controversy under a claim for failure to pay wages on termination under Labor Code Section 203. This is especially true when the claim is pleaded in a derivative manner because any amount of unpaid wages (whether unpaid overtime or unprovided meal periods) would trigger waiting time penalties. *Ramos v. Schenker, Inc*., No. 5:18-cv-01551-JLS-KK, 2018 U.S.Dist.LEXIS 187557, at *7 (C.D.Cal. Nov. 1, 2018) (denying plaintiff's motion to remand and holding: "Whereas assumptions about the regularity and extent of the underlying overtime violations may be fairly contested at this stage, the very nature of a class action complaint for unpaid overtime

wages requires Plaintiff to allege that putative class members have not received all wages owed in violation of the law. Therefore, Plaintiff's allegations of unpaid wages are implicit allegations of maximum damages for waiting time penalties. This reasoning is shared by other courts in this circuit."); see, e.g., *Mendoza*, 2022 U.S. Dist. LEXIS 167940, at *17-18 (finding the defendant's assumption of a 100% violation rate to be reasonable "because Defendant…need only have caused and failed to remedy a single violation per employee for waiting time penalties to apply") (citation and internal quotation marks omitted).); *Marentes v. Key Energy Servs. Cal.* (E.D.Cal. Feb. 23, 2015, No. 1:13-cv-02067 AWI JLT) 2015 U.S.Dist.LEXIS 21377, at *23 ("Because these wages are alleged to have not been paid, the full thirty-days may be used for each of the putative class members."); *Roth v. Comerica Bank* (C.D.Cal. 2010) 799 F.Supp.2d 1107, 1125-1126 ("The court agrees that Roth's allegations suggest all class members were denied some form of proper compensation during their employment, and that the underpayment was not corrected at end of their employment. Thus, defendants can properly assume that all employees were entitled to maximum waiting time penalties under Labor Code § 203."); *Avila v. Northwood Hosp. LLC* (C.D.Cal. Feb. 5, 2024, No. 2:23-cv-09598-SB-AS) 2024 U.S.Dist.LEXIS 19850, at *11 (denying plaintiff's motion to remand and holding: "Defendant identifies 84 employees who have separated from their employment with Defendant since September 18, 2020. As in Jauregui, it is reasonable to assume that all 84 of these employees are entitled to the full 30-day penalty.").

35.     Moreover, assuming a full 30-day of waiting time penalties is also reasonable since Defendant disputes the underlying wage claims and would not have paid for alleged unpaid overtime hours or alleged meal period premiums Plaintiff contends are due. See, e.g., *Jauregui v. Roadrunner Transp. Servs.* (9th Cir. 2022) 28 F.4th 989, 993-994 (holding the district court erred in rejecting the defendant's assumption that all former employees were entitled to the full 30 days of waiting time penalties: "The district court did not afford Roadrunner this latitude when analyzing the amount in controversy. As one example, the court rejected Roadrunner's assumption that each terminated employee would have been

entitled to the maximum 30-day waiting time penalty because Roadrunner 'provides no evidence' supporting that fact. But it was not unreasonable for Roadrunner to assume that the vast majority (if not all) of the alleged violations over the four years at issue in this case would have happened more than 30 days before the suit was filed, which would entitle the employees to the 30-day penalty. The fact that a very small percentage of employees might possibly not be entitled to the maximum penalty is not an appropriate reason to dismiss altogether Defendant's estimate for this claim.").

36. Labor Code section 203 has a three-year statute of limitations.[9] Going back three years from when the First Amended Complaint was filed, or December 17, 2021, to when the data was pulled, or September 27, 2024, over 1,000 full-time Putative Class Members have been terminated, resigned, or have otherwise separated from their employment with Defendants for at least thirty days, potentially qualifying them for the full thirty days of waiting time penalties as alleged in Plaintiff's Complaint. (Garza Decl. at ¶ 10.) Thus, while Defendants completely deny Plaintiff is entitled to recover any waiting time penalties, based on the allegations in the Complaint, it is plausible that Plaintiff has placed over **$5,520,000** in controversy in connection with his claim for waiting time penalties ($23.00 average hourly rate x 8 hours/day x 30 days x 1,000 Putative Class Members who have been terminated for at least thirty days).

*Attorneys' Fees*

37. Plaintiff also seeks an unspecified amount of attorneys' fees in connection with his putative class claims for unpaid wages, failure to provide meal periods, failure to provide rest periods . (Complaint at ¶¶ 32, 65, 79, 87, 103, 117, 123, 129, 155, Prayer for Relief.) The Court should consider and include these fees and costs in determining the amount in controversy. *Goldberg v. CPC Int'l, Inc.* 678 F.2d 1365, 1367 (9th Cir. 1982), cert. denied, 459 U.S. 945 (1982); *Galt G/S v. JSS Scandinavia* 142 F.3d 1150, 1155-56 (9th Cir. 1998); *Solorzano v. Alsco Inc.*, 2021 U.S. Dist. LEXIS 129517 at *3 (C.D. Cal. July 12, 2021)

---

[9] A three-year statute of limitations applies to claims for waiting time penalties under Labor Code section 203. See *Pineda v. Bank of America* (2010) 50 Cal.4th 1389.

| Case No.: | 16 | NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT |
|---|---|---|

("Future attorney's fees must be included in the amount in controversy.") (citations omitted).). Attorneys' fee awards in California wage-hour class actions can easily total several hundred thousands of dollars or more. *See, e.g., McGuigan v. City of San Diego,* 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million); *Pellegrino v. Robert Half Int'l, Inc.,* 182 Cal. App. 4th 278, 287, 296 (2010) (affirming $558,926.85 in attorneys' fees in exemption misclassification class case, but reversing as to multiplier); *Vasquez v. California,* 45 Cal. 4th 243, 249 (2008) (noting award of $435,000 in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties and waiting time penalties). Moreover, the Ninth Circuit recently concluded "that the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.,* 888 F.3d 413, 414-15 (9th Cir. 2018); *see also Baker v. Tech Data Corp.*, 2022 U.S. Dist. LEXIS 66950 at *4 (C.D. Cal. Apr. 11, 2022) ("Recent estimates for the number of hours expended through trial for employment cases in this district have ranged from 100 to 300 hours."); *Lucas v. Michael Kors (USA) Inc.,* No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *32 (C.D. Cal. May 9, 2018) ("unaccrued post-removal attorneys' fees can be factored into the amount in controversy.").

38. "Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages." *Fong v. Regis Corp.,* No. C 13-04497 RS, 2014 U.S. Dist. LEXIS 275, at *23 (N.D. Cal. Jan. 2, 2014); *see also Herrera v. Carmax Auto Superstores Cal., LLC,* No. EDCV-14-776-MWF (VBKx), 2014 U.S. Dist. LEXIS 188729, at *12 (C.D. Cal. June 12, 2014) ("Substantial authority supports a 'benchmark' 25 percent attorneys' fees figure to be added to any claim for which attorneys' fees are available."); *Hamilton v. Wal-Mart Stores, Inc.,* No. ED CV 17-01415-AB (KKx), 2017 U.S. Dist. LEXIS 162856, at *16 (C.D.

Cal. Sep. 29, 2017) ("The Ninth Circuit has allowed an estimate fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA."); *Gutierrez v. Stericycle, Inc.,* No. LA CV15-08187 JAK (JEMx), 2017 U.S. Dist. LEXIS 20975, at *51 (C.D. Cal. Feb. 14, 2017) ("it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims.").

39. Nevertheless, even without considering attorneys' fees nor the potential damages for the remaining causes of action, including the number of named Defendants, failure to pay minimum wages; failure to pay overtime wages; failure to provide rest periods; unlawful deductions; failure to reimburse business expenses; and failure to provide accurate itemized wage statements, Defendants have sufficiently demonstrated that the amount in controversy easily exceeds $5 Million based on very reasonable assumptions.

*Total Plausible Amount in Controversy*

40. Thus, for the reasons discussed above, and without conceding or admitting to the underlying merit of Plaintiff's claims, but rather expressly denying all allegations set forth in the Complaint, it is plausible that the aggregate amount in controversy in connection with Plaintiff's putative class claims (over **$7,360,000** for the relevant time period) surpasses the $5,000,000 jurisdictional threshold required under CAFA:

| | |
|---|---|
| Failure to Provide Meal Periods (Third Cause of Action) | $1,840,000 |
| Failure to Timely Pay Final Wages at Termination (Fifth Cause of Action) | $5,520,000 |
| **Plausible Amount-In-Controversy:** | **$7,360,000** |

**D.    The Putative Class Contains More Than 100 Members.**

41. Defendants' records identify over 2,000 individuals including Plaintiff who have been employed by either CARDINAL HEALTH 110, LLC or CARDINAL HEALTH 200, LLC as non-exempt employees in the State of California at some point from December

17, 2020 and when the employee data was pulled on September 27, 2024. (Garza Declaration, ¶ 8.)

### E. None Of The Named Defendants Are Government Entities.

42. None of the Defendants is a State, a State official, or any other governmental entity. (Garza Decl. at ¶ 3.)

### NOTICE TO ALL PARTIES AND STATE COURT

43. In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be served promptly on Plaintiff's counsel and filed with the Clerk of the Los Angeles Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 will be followed and satisfied.

### CONCLUSION

Based on the foregoing, Defendants hereby remove the above-captioned action from the Los Angeles County Superior Court to this Court based on CAFA requirements (28 U.S.C. §§ 1332(d), 1441, 1446 and 1453) and respectfully requests that this Court retain jurisdiction for all further proceedings.

DATED:  March 26, 2025                     JACKSON LEWIS P.C.

By: _____
Adam J. Siegel
Orlando Arellano
Rebecca Kim

Attorneys for Defendants
CARDINAL HEALTH 100, LLC;
CARDINAL HEALTH 108, LLC;
CARDINAL HEALTH 110, LLC;
CARDINAL HEALTH 119, LLC;
CARDINAL HEALTH 200, LLC;
CARDINAL HEALTH 201, INC; and
CARDINAL HEALTH 414, LLC

4906-8567-1215, v. 1

Case No.: | 19 | NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT